## Lebanon Gas & Fuel Company, Appellant, *v.* Public Service Commission.

*Public Service Commission—Public Service Company Law—Gas companies—Rates—Schedules—"Three part rate"—Disallowance.*

A rate schedule of an artificial gas company provided for a "three part rate," consisting of (1) "customer's charge," (2) "demand charge," and (3) "consumption charge."

An analysis of the rate showed that only about 28.7 of the company's revenue accrued to it from the consumption charge, variable with the amount of gas consumed. The remainder of the revenue was chargeable to patrons irrespective of consumption.

The commission refused to approve the rate because only about one-fourth of the total revenues were applicable to the consumption elements and nearly three-fourths to nonconsumption factors, constituting fixed charges upon consumers, whether gas was or was not consumed by them.

*Held:* That the commission was clearly within its statutory authority in setting aside such a rate. Its disallowance did not prevent the company from establishing an adequate rate. The only objection to the rate as filed was that it introduced a factor, unknown in Pennsylvania, which imposed an unfair burden and involved complications of construction.

Argued April 12, 1923. Appeal, No. 12, March T., 1923, by Lebanon Gas & Fuel Company from finding, determination and order of the Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket, No. 4111, in case of City of Lebanon and Lebanon Chamber of Commerce v. Lebanon Gas & Fuel Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Complaint against rates and schedules of artificial gas company.

The facts are stated in the opinion of the Superior Court.

The commission made the following report and order:

At the hearings and in arguments the outstanding question which developed was whether a so-called three part rate which the Lebanon Gas and Fuel Company had filed was unjust, unreasonable and discriminatory.

It is radical departure from the customary form of rate structure, applicable to artificial gas companies in Pennsylvania, and is not in harmony with the practices of this company as disclosed by former rate schedules, which adhered to a two part rate, consisting of demand and consumption elements.

Under the three part rate which is the subject of attack in this proceeding, respondent's patrons are subjected to (a) a customer's charge, (b) a demand charge, and (c) a consumption charge.

The first of these, the customer's charge, is essentially the same as a service charge as generally designated. The demand charge, as used in this rate schedule, is an innovation in rate making in Pennsylvania, and is a fixed charge per customer based upon a demand rating determined by the number and kind of appliances installed in house or place of business for the consumption of gas. It might be designated an appliance charge.

The consumption charge is based on quantity of gas consumed and is essentially the same as the output or consumption charge as these terms are generally understood.

The theory upon which respondent attempts to support the three part division of its rates is that the (b) demand charge covers, after the meter and billing expenses of the customer are cared for by the (a) customer's charge, a certain cost to the respondent which it must incur in holding its plant in a state of readiness to serve a capacity or peak load.

In analyzing the effect of such rate allocations it appears that only about 28.7 per cent of respondent's total revenues accrues to it from the consumption charge (variable with the amount of gas consumed). The remainder of the revenue is chargeable to patrons irrespective of consumption. A segregation is unjustifiable in which only about one-fourth of total revenues is applicable to the consumption elements and nearly three-fourths to nonconsumption factors constituting fixed charges upon consumers whether gas is or is not consumed by them.

The inequalities of such a rate schedule division are so apparent that it is not at all essential to point out by specific illustrations the instances of injustice bound to arise.

It was not apparent from the testimony that the total revenue which respondent is receiving is greater than it is entitled to receive, but the distribution of the rate

burden upon consumers is inequitable, unjust, unreasonable and unduly discriminatory.

The three part rate schedule P. S. Pa. No. 6, effective March 27, 1921, cannot be sustained. The respondent will be directed within thirty days to prepare and file with the commission a new rate schedule in elimination of the three part plan. In the formulation of the new rates, a conference with representatives of the commission and engineers for respondent and complainant is directed, and, if agreement cannot be reached by them, respondent may file a tariff which can be made the basis for further inquiry and order by the commission.

The complaint to the extent indicated is sustained.

### ORDER.

This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaint and answer on file, and having been duly heard and submitted by the parties and full investigation of the matters and things involved having been had, and the commission having on the date hereof made and filed of record a report containing its findings of fact and conclusions thereon, which said report is hereby approved and made part hereof:

Now, to wit, June 13, 1922, it is ordered: That said complaint be and the same is hereby sustained to the extent indicated in the foregoing report and that the Lebanon Gas and Fuel Company, respondent, within thirty days from the date of the service hereof, file post and publish, effective upon one day's notice to the public and this commission, a new tariff schedule which will eliminate the present three-part rate herein complained against; said tariff schedule to be the result of an agreement between representatives of this commission, the respondent and the complainant.

In the event the said parties cannot agree upon the tariff schedule to be filed as aforesaid, permission is hereby granted said respondent to file a tariff schedule as a

24 LEBANON GAS & FUEL CO., Appel., *v.* PUB. SER. COM.

Statement of Facts—Opinion of the Court. [82 Pa. Superior Ct.

basis for further inquiry and order by the commission. Respondent appealed.

*Error assigned* was the order of the commission.

*John R. Geyer,* and with him *Walter C. Graeff,* for appellant.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for appellee.

OPINION BY HENDERSON, J., October 5, 1923:

The appellant is a public service company engaged in the manufacture and sale of artificial gas in the City of Lebanon. It established a rate which is the subject of this litigation. Three elements enter into the rate, respectively described as (1) "customers' charge," (2) "demand charge," (3) "consumption charge." The first is in substance a service charge as that term is commonly understood. The third is based on the quantity of gas furnished and is a consumption charge. The second is new to Pennsylvania rate making as applied to artificial gas companies and is authorized as claimed by the appellant because of the cost to which it is subjected in keeping its plant in condition to meet the heaviest demand for service. It is a fixed charge depending on the number and kind of appliances for the consumption of gas used by the patrons of the company. It is worked out on an alleged theory of fairness taking into consideration the service value, the gas consumed, and the cost of readiness to serve to the limit of the demand. In the present case, however, it would seem to be a method of so obscuring the basis of the total charge to customers that they could not readily understand what was the consideration for their monthly bills. It was found by the commission an analysis of the rate showed that only about 28.7% of the total cost to customers arose from the consumption charge, the amounts varying

with the season and the quantity of gas consumed. The balance of each customer's charge was made for what is commonly known as the customer's charge, and the charge for readiness to serve. We think it unnecessary to enter into a discussion to show that a rate system which imposes on the patrons of the company nearly three-fourths of the total cost of service for something that is not gas involves an element of unfairness. The justification of the use of a rate so constructed is said to be that if a greater portion of the charge is placed on consumption the large consumers would abandon the use of gas and thereby diminish the demand to a point which would render the business of the company unproductive; but this is largely a theoretical or speculative contention and does not appear to be a warrant for shifting the burden of maintaining the company's plant from the persons who use large quantities of the product to those who use smaller quantities. If the plant is to operate at all it must be adequate to such service as will be remunerative and what the company is authorized to do under the Act of 1874, P. L. 73, is to manufacture and supply gas. The contention of the appellant that they sell "customer service," "peak service," and "gas" each at his own price is not supported by their charter. While allowance may be made in a reasonable way for what is known as customer's service, the essential and principal thing for which the company is authorized to charge is gas furnished the public. We think therefore that the commission was clearly within its statutory authority in setting aside such a rate. Its disallowance does not prevent the company from establishing an adequate rate. The commission has not found that the aggregate income is excessive—the only objection to the rate being that it introduces a factor, unknown in this State or throughout the country generally, which imposes an unfair burden and involves complications of construction not tending to equality. We are unable to find any element of confiscation involved in the case.

There is no denial to the company of the right to have a sufficient rate. This should be based on elements not obscure nor introduced for the purpose of producing an income out of proportion to the service rendered. The learned counsel for the appellant have presented in an elaborate argument various aspects of the case which are interesting, but we are not convinced that the action of the commission is not within its power. The opinion of the commission clearly sets forth the basis of the conclusion reached and we are unable to hold that it is unlawful or unreasonable.

The report of the commission is affirmed and the appeal dismissed at the cost of the appellant.